IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| CAMERON MIKKAIL ANDERSON, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 5:16CV00314-JJV |
| JIM SNYDER, | * | |
| Sheriff, Desha County[1]; *et al.* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Cameron Anderson ("Plaintiff") brought this action pro se and under 42 U.S.C. § 1983. (Doc. No. 2.) On September 19, 2016, Mr. Anderson was a pretrial detainee at the Dumas City Jail and says Defendants used excessive force against him. (*Id*.at 4-6.)

Defendants have now filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 13-15) and submitted a video recording of the incident (Doc. No. 16). Plaintiff has not responded. After careful consideration of the Motion, Brief, Statement of Facts, and video evidence, I find no genuine issues of material fact exist for trial and Defendants are entitled to summary judgment as a matter of law.

**II.    COMPLAINT**

Plaintiff says on the morning of September 19, 2016, "While handcuffed and shackled, I was [roughly] pushed from behind by Sheriff Jim Snyder. As I was turning he grabbed my left shoulder with his left hand and punched me in my face with his right hand. I then lifted my cuffed

---

[1] Jim Snyder is the Sheriff of Desha County and the "Desha County Police Department" is not an entity. Therefore, the Clerk shall amend the docket sheet to reflect the correct title of Defendant Snyder.

hands in defense [and] he attempted to strike me again so I pulled us both to the ground and held him to avoid being hit." (Doc. No. 2 at 4-5.) Plaintiff says Lt. Donigan then arrived on the scene and pulled out his taser. (*Id.* at 5.) Plaintiff put his "hands up and said don't shoot," and Sheriff Snyder punched him in the head and told Lt. Donigan to tase him. (*Id.*) Plaintiff says he submitted but Sheriff Snyder said, "shoot his ass," and Lt. Donigan tased Plaintiff "for an uncertain amount of time, but it was long enough to cause burns on [his] right ankle and right wrist." (*Id.*)

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. Id. (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.  ANALYSIS

### A.  Official Capacity

Defendants correctly point out that Mr. Anderson does not state whether he is suing Sheriff Snyder and Lt. Donigan in their individual or official capacities.  When a complaint is silent as to capacity, it must be interpreted to state only official capacity claims.  *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007).  As such, Mr. Anderson's claims should only proceed against Desha County and the city of Dumas.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  And to hold these entities liable for any violation of his rights, Plaintiff must assert that some policy or custom of the city or county "played a part in the violation of federal law." *Id*.

> § 1983 liability against counties and other local government units is limited:
>
> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.

*Monell v. Dept. of Social Svcs.*, 436 U.S. 658, 690-91 (1961).

As Defendants correctly argue, Plaintiff's Complaint fails to allege any facts to support that a custom or policy of Desha County or the City of Dumas resulted in the violation of his rights.  Therefore, his Complaint should be dismissed on this basis alone.

### B.  Individual Capacity/Qualified Immunity

Defendants argue they are entitled to qualified immunity for Plaintiff's excessive force claims.  Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.*"  Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  *McClendon v. Story Cnty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether a defendant is entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions."  *Nelson v. Corr. Med. Services*, 583 F.3d 522, 528 (8th Cir. 2009).

> United States Supreme Court precedent establishes:
>
> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

After careful review of this matter, as discussed more thoroughly below, I find Defendants did not use excessive force against Plaintiff.  Accordingly, Defendants did not violate Plaintiff's constitutional rights and are entitled to qualified immunity.

### C.     Excessive Force

When addressing an excessive force claim brought under § 1983, a court's analysis begins by identifying the specific constitutional right allegedly violated.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct."  *Id*.  Plaintiff was a pretrial detainee, so his excessive force claims, although grounded in the Fifth and Fourteenth Amendments, are analyzed under the Fourth Amendment's objective reasonableness standard.  *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).  "The reasonableness of a particular use of force is examined from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. at 396; *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006).  The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in that particular situation."  *Graham*, 490 U.S. at 396-97; *Henderson*, 439 F.3d at 502.

Defendants asserts that the use of a taser and physical force was justified and reasonable under the circumstances.  (Doc. No. 14 at 4-5.)  In support of their assertion, Defendants submitted video evidence of the September 19, 2016, incident.  (Doc. No. 16.)  When an uncontested videotape is submitted in support of a motion for summary judgment, the court is to view the facts in the light depicted by the videotape.  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

The video evidence shows the events from start to finish. I have closely reviewed the video evidence and find this is exactly the type of potentially violent scenario that entitles Defendants deference in their decision-making. *See Whitley v. Albers*, 475 U.S. 312 (1986). The video also wholly contradicts Plaintiff's version of events.

The video shows Sheriff Snyder attempting to place handcuffs and leg irons on Plaintiff and another inmate. (Doc. No. 16 at 08:38.) Sheriff Snyder is the only person in the holding area with these two inmates. Sheriff Snyder first places leg irons on Plaintiff. (*Id*. at 08:38:30.) He then places leg irons on the other inmate. (*Id*. at 08:38:46.) It appears that Plaintiff and Sheriff Snyder are exchanging words. (*Id.*) Sheriff Snyder begins to place handcuffs on the other inmate, but turns around to address Plaintiff. (*Id.* at 08:38:55.) The other inmate is wholly compliant and Sheriff Snyder successfully places handcuffs on him. (*Id.* at 08:39:00.) Sheriff Snyder then begins to place handcuffs on Plaintiff and it appears the two are again exchanging words. (*Id.* at 08:39:12.) Plaintiff resists Sheriff Snyder but he continues to try and handcuff Plaintiff. Plaintiff begins to back away but then flails his cuffed hands upward toward Sheriff Snyder's face. (*Id.* at 08:39:28.) A scuffle ensues and Plaintiff charges toward Sheriff Snyder knocking him to the ground. (*Id.* at 08:39:33.) At this moment, Plaintiff overpowers Sheriff Snyder. The struggle continues and Sheriff Snyder regains control over Plaintiff. (*Id.* at 08:39:36.) Two jailers appear on the scene and Plaintiff continues to resist. Lt. Donigan then appears with his taser in hand. (*Id.* at 08:39:41.) Plaintiff continues to resist and, at some point, Lt. Donigan employs the taser. (*Id.* at 08:39:41-08:40:03.) Plaintiff eventually submits and Sheriff Snyder lifts Plaintiff off the ground to his feet. (*Id.* at 08:40:06.) At this point the incident is over. Sheriff Snyder appears shaken by events.

The video evidence contradicts Plaintiff's version of events and conclusively shows that Defendants did not violate Plaintiff's constitutional rights.  To the contrary, Defendants are to be commended for exercising restraint.  But for Plaintiff resisting Sheriff Snyder, no force would have been used against Plaintiff.  Additionally, it is Plaintiff who first struck at Sheriff Snyder and then overpowered him by charging him and knocking him to the floor.  Lt. Donigan's use of the taser was solely for the purpose of gaining control of Plaintiff.  Once Plaintiff submitted, Sheriff Snyder and Lt. Donigan assisted Plaintiff and no further issues are noted.

Accordingly, I find there are no genuine issues for trial.  Defendants' use of force was reasonable under the circumstances.  They are, therefore, entitled to summary judgment as a matter of law and Plaintiff's excessive force claims against them are dismissed.

**V.   CONCLUSION**

IT IS, THEREFORE, ORDERED that:

1. The Clerk shall amend the docket sheet to reflect the correct title of Defendant Snyder is Sheriff, Desha County.

2. Defendants' Motion for Summary Judgment (Doc. No. 13) is GRANTED.

3. This cause of action is DISMISSED with prejudice.

4. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from this Order and the accompanying Judgment would not be taken in good faith.

SO ORDERED this 2nd day of June, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE